## Reeser Estate

*P. Herbert Reigner*, for trustee.

*John B. Stevens Jr.*, for First Presbyterian Church.

MARX, P. J., June 19, 1954.—Howard S. Reeser died on August 12, 1933, testate and not married. His last will, dated November 12, 1932, was probated on August 17, 1933. Letters testamentary were thereupon issued to the Reading Trust Company, executor.

The executor filed its account on July 31, 1934, and distribution of $1,875.98 to the City Bank and Trust Company of Reading, trustee, was decreed on October 27, 1934.

By his will testator gave pecuniary bequests and, as to the residue of his estate, disposed as follows:

"If there is a balance to my Estate after all Debts have been settled, the interest of the money invested safely shall go to the education of some reliable boy a member of the 1st Presbyterian Church Reading Pa. for the Profession of Medicine, Surgery or a Specialty as the Boy may select. The Trustees of said Church to select the applicant, This in memory of my Dec'd Parents, Devout members of said church."

On January 21, 1937, the trustee filed its first account charging itself with the aforesaid award of $1,875.98, and with a gain of $250.00 on conversion. The account showed a personal estate principal balance due the estate of $2,108.48. The account also included proceeds of sale of real estate of the testator, premises No. 111 South Fifth Street, Reading, $7,000.00, with a balance due the estate on that account of $5,376.31. The account also included income aggregating $146.67, with a balance due the estate of $139.34. Under an adjudication confirmed March 13, 1937, this court found a personal estate balance of $2,108.48, and a real estate balance of $5,376.31, a total of $7,484.79. That principal balance was awarded to the City Bank and Trust Company of Reading, Pa., accountant, trustee, for administration under the terms of the testamentary trust. The court also awarded to the trustee a balance on income, $135.34.

A second account of the trustee was audited on June 7, 1946. We there found a net principal balance due the estate of $7,482.79, composed of cash and unconverted assets. That balance was awarded to the accountant for further administration under the

terms of the trust. In that adjudication we found a balance due the estate on income of $1,766.66. The balance, composed of cash, $730.66, and a $1,400. war savings bonds, series F, carried at $1,036, was likewise awarded to the trustee for further administration and accounting.

The trustee now presents its petition, averring that the principal of the trust remains unchanged, and that the income of the trust has cumulated to approximately $3,300.

The petition avers that during the period of approximately 20 years the income of the trust has been permitted to cumulate; that no application for the benefits of the trust has at any time been approved; that now the trustees of the First Presbyterian Church of Reading have received an application for the use and benefit of income of the trust; that they have approved the applicant as worthy and proper, and on April 1, 1954, unanimously resolved:

"That the City Bank and Trust Company, Reading, Pennsylvania as trustee under the Dr. Howard Reeser Trust Fund be requested to take necessary legal steps to make Mary Orff, a member of the congregation studying for the medical profession, eligible to receive the sum of three hundred dollars ($300) from the said trust fund."

The nominee for an award, Mary Clarke Orff, 21 years of age, daughter of Dr. and Mrs. J. Henry Orff, a practicing physician, was graduated from Wilson College, Pennsylvania, in May 1954. Her scholastic standing was high; she was given the citations "Magna cum Laude," "Departmental Honors in Chemistry," and "Distinction in Comprehensive Examinations". She was elected to the local chapter of Phi Beta Kappa. She is well qualified for the award, and the sole question requiring decision is whether the

award may be made to this nominee of the trustees of the church or the employment of income must be postponed indefinitely, and perhaps the trust fail, for want of an available "boy" donee.

The intended trust is charitable, public, not private. The beneficiary is not named. The interest of the fund is available for education, preparatory to the practice of "medicine, surgery or a specialty". The ultimate purpose is the promotion, recovery and preservation of the health and lives of people generally, rather than provision of an opportunity for a "boy". The will designates, as the immediate beneficiary, the channel through which the ultimate purpose shall be obtained, a "reliable boy, a member of the First Presbyterian Church, Reading, Pa". Not named, nor otherwise identified, he may, through study, investigation and experiment uncover the formula for the conquest of disease and destruction, and become a benefactor of mankind. The trustees of the church are directed to select the applicant.

Although the trust has been available for 20 years, no award, under the strict and specified limitations of the will, has been made. Now the trustees have unanimously approved an award of $300 to Mary Clarke Orff, a member of the congregation, and they seek approval of their award.

"The fundamental distinction between private trusts and charitable trusts is that in the case of a private trust property is devoted to the use of specified persons who are designated as beneficiaries of the trust; whereas in the case of a charitable trust property is devoted to purposes beneficial to the community . . . a charitable trust can be created although there is no definite or definitely ascertainable beneficiary designated, . . . and a charitable trust is not invalid although by the terms of the trust it is to continue for an indefinite or unlimited period. . . .

"The doctrine of cy pres, which is applicable to charitable trusts . . . is not applicable to private trusts,": A. L. I of the Law Trusts, §399.

A trust for the promotion of education is not charitable if the beneficiaries are limited to the members of a class so small that the relief of the class is not of benefit to the community. Thus a trust for the benefit of persons designated by name is not charitable. The mere fact that the class of persons to be benefited is potentially large is not necessarily enough to make a trust for their education a charitable trust. Thus a trust for the education of the descendants of settlor is not a charitable trust, but a trust to establish a scholarship not limited to the descendants of settlor is charitable, although preference is to be given to the descendants of the settlor: A. L. I. Restatement of the Law of Trusts, §375.

Experiences of the First World War emphasized the stern insufficiency of existing methods, medicines and practitioners to cope with the destructive forces of those days. Men and more men were needed; women had already come to answer the call, first to repair and then to rebuild the sick and broken bodies. Today, girls and women are turning in increasing numbers to the study and practice of medicine, surgery and kindred specialties. In 1932, when testator wrote, preference still pointed to the men, but it was evident the women were available. Testator's selection did not indicate a bar in favor of male. The selection may have indicated a preference, but did not constitute a bar against the female.

In the light of the experience of the last 20 years, an award of income should now be made. The sum of $300 is suggested. The award of that sum would be self-defeating. To properly prepare and equip a young man or woman, for the stupendous task ahead, must mean devotion to the work for at least four

years, and an allowance of at least $400 a year in addition to help otherwise obtained. The application presents an honest proposal, one to be honestly met.

The application is accordingly granted as herein extended and the trustee is advised that the appropriation of $400 a year, against income accrued and accruing, during the next four years, if the preparatory education is so long pursued, is authorized and confirmed.